FILED
CLERK
4:19 pm, Dec 21, 2018
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
Thomas Sidik, as Administrator of the Estate of Kristen A. Sidik, deceased, Thomas Sidik as Parent and Natural Guardian of K.S., an infant, and C.S., an infant and Thomas Sidik, Individually,

                 Plaintiff,

             -against-

Royal Sovereign International Inc., Royal Centurian Inc., RS Ningbo, Inc ., Royal Sovereign Qingdao a/k/a RS Qingdao, BJ's Wholesale, Inc., ADT LLC and Defenders, Inc. d/b/a Protect Your Home,

                 Defendants.
-----------------------------------------------------------X

MEMORANDUM OF DECISION & ORDER
2:17-cv-07020 (ADS)(ARL)

**APPEARANCES:**

**Wisell & McGee LLP**
*Counsel for the Plaintiff*
80-02 Kew Gardens Road, Suite 307
Kew Gardens, NY 11415
       By:    Nancy McGee, Esq., Of Counsel

**Kaufman Borgeest & Ryan LLP**
*Counsel for Royal Sovereign International, Inc. and Royal Centurion Inc., Co-Counsel for BJ's Wholesale Club*
200 Summit Lake Drive
Valhalla, NY 10595
       By:    Michael P. Mezzacappa, Esq.,
               Stephanie Gitnik, Esq., Of Counsel

**Goldberg Segalla LLP**
*Co-Counsel for BJ's Wholesale Club*
200 Garden City Plaza, Suite 520
Garden City, NY 11530
       By:    Joseph D. Velez, Esq., Of Counsel

1

**O'Connor, O'Connor, Hintz & Deveny**
*Counsel for ADT LLC and Defenders, Inc.*
1 Huntington Quadrangle
Melville, NY 11747
    By:    Robert E. O'Connor, Esq., Of Counsel

**NO APPEARANCES:**

*RS Ningbo, Inc., Royal Sovereign Qingdao a/k/a RS Qingdao*

**SPATT, District Judge**:

On December 1, 2017, Thomas Sidik ("T. Sidik" or the "Plaintiff") commenced this action individually, as Administrator of the Estate of Kristen A. Sidik ("K. Sidik"), his wife, and on behalf of K.S. and C.S., his two infant children (the "Children"), against Royal Sovereign International Inc., Royal Centurion Inc. (together, the "Royal Defendants"), RS Ningbo, Inc., Royal Sovereign Qingdao a/k/a RS Qingdao (together, the "Non-Appearing Defendants"), BJ's Wholesale, Inc. ("BJs"), ADT LLC ("ADT"), and Defenders, Inc. d/b/a Protect Your Home ("Defenders") (all together, the "Defendants") after a fire at his home on August 24, 2016. The incident caused severe injuries to the Children and K. Sidik. Later that year, K. Sidik passed away from her injuries.

The Plaintiff asserts the following claims: (1) negligence against the Royal Defendants, the Non-Appearing Defendants and BJs; (2) negligence against ADT and Defenders; (3) breach of express warranty against the Royal Defendants, the Non-Appearing Defendants and BJs; (4) breach of implied warranty against the Royal Defendants, the Non-Appearing Defendants and BJs; (5) failure to warn against the Royal Defendants, the Non-Appearing Defendants and BJs; (6) strict liability against the Royal Defendants, the Non-Appearing Defendants and BJs; and (7) wrongful death against the Defendants.

Presently before the Court is a motion by ADT and Defenders (together, the "Moving Defendants"), pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6), seeking to dismiss the second and seventh claims for failure to state a claim upon which relief may be granted.

For the following reasons, the Moving Defendants' motion to dismiss is granted.

## I. BACKGROUND

Unless otherwise noted, the following facts are drawn from the Plaintiff's complaint, and for the purposes of the instant motion, are construed in favor of the Plaintiff.

On or about June 6, 2012, T. Sidik and K. Sidik purchased a portable air conditioner manufactured by the Royal Defendants. This air conditioning was placed in the dining room of the family home, located at 38 Sterling Lane in Smithtown, New York (the "Residence").

Later that month, T. Sidik entered into an alarm services contract with Defenders (the "Contract"), an ADT authorized detailer. *See* Ex. F-1, Dkt. 29. The Contract had an initial term of three years and covered "alarm monitoring and notification services" as well as equipment installation and connection. It was signed by T. Sidik and was subsequently assigned to ADT. The Plaintiff agreed to a monthly service rate of $44.99. The Contract includes a disclaimer that Defender is not an insurer of the safety of persons or the condition of the property covered. The Plaintiff purchased an Impassa Base, key fob, wireless carbon monoxide detector, cellular backup, two wireless door/window sensors, three wireless shock detectors and a wireless smoke communicator. In pertinent part, the Contract details the following:

> You acknowledge that: (a) We have explained the full range of protection, equipment, and services available to You, (b) additional protection over and above that provided herein is available and may be obtained from Us at an additional cost to you (c) You desire and have contracted for only the equipment and services itemized on this Contract ... We are not a security consultant.

…

**NO LIABILITY; LIMITED LIABILITY.** IT WILL BE EXTREMELY DIFFICULT TO DETERMINE THE ACTUAL DAMAGES THAT MAY RESULT FROM OUR FAILURE TO PERFORM OUR DUTIES UNDER THIS CONTRACT. YOU AGREE THAT WE AND OUR ASSIGNEES ... ARE EXEMPT FROM LIABILITY FOR ANY LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE ARISING DIRECTLY OR INDIRECTLY FROM THE SERVICES , .. WE PERFORM OR THE SYSTEMS WE PROVIDE UNDER THIS CONTRACT. IF IT IS DETERMINED THAT WE OR ANY OF OUR ASSIGNEES . . . ARE DIRECTLY OR INDIRECTLY RESPONSIBLE FOR ANY SUCH LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE, YOU AGREE THAT DAMAGES SHALL BE LIMITED TO THE GREATER OF $500 OR 10% OF THE ANNUAL SERVICE CHARGE YOU PAY UNDER THIS CONTRACT. THESE AGREED UPON DAMAGES ARE NOT A PENALTY. THEY ARE YOUR SOLE REMEDY NO MATTER HOW THE LOSS, DAMAGE, INJURY OR OTHER CONSEQUENCE IS CAUSED, EVEN IF CAUSED BY OUR NEGLIGENCE, GROSS NEGLIGENCE, FAILURE TO PERFORM DUTIES UNDER THIS CONTRACT, STRICT LIABILITY, FAILURE TO COMPLY WITH ANY APPLICABLE LAW, OR OTHER FAULT. AT YOUR REQUEST, WE MAY ASSUME ADDITIONAL LIABILITY BY ATTACHING AN AMENDMENT TO THIS CONTRACT STATING THE EXTENT OF OUR ADDITIONAL LIABILITY AND THE ADDITIONAL COST TO YOU. YOU AGREE THAT WE ARE NOT AN INSURER EVEN IF WE ENTER INTO ANY SUCH AN AMENDMENT.

…

**EXCLUSIVE DAMAGES REMEDY.** YOUR EXCLUSIVE DAMAGE AND LIABILITY REMEDIES ARE SET FORTH IN PARAGRAPH 6 ABOVE. WE ARE NOT LIABLE TO YOU OR ANY OTHER PERSON FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES.

…

**HOLD HARMLESS.** IN THE EVENT ANY LAWSUIT OR OTHER CLAIM IS FILED BY ANY OTHER PARTY AGAINST US OR OUR ASSIGNEES ... ARISING OUT OF THE SERVICES WE PERFORM OR THE SYSTEMS WE PROVIDE UNDER THIS CONTRACT, YOU AGREE TO BE SOLELY RESPONSIBLE FOR, AND TO INDEMNIFY AND HOLD US COMPLETELY HARMLESS FROM SUCH LAWSUIT OR OTHER CLAIM INCLUDING YOUR PAYMENT OF ALL DAMAGES, EXPENSES, COSTS AND ATTORNEYS' FEES. THESE OBLIGATIONS WILL SURVIVE THE EXPIRATION OR EARLIER TERMINATION OF THIS CONTRACT. THESE OBLIGATIONS WILL APPLY EVEN IF SUCH LAWSUIT OR OTHER CLAIM ARISES OUT OF OUR NEGLIGENCE, GROSS NEGLIGENCE, FAILURE TO

PERFORM DUTIES UNDER THIS CONTRACT, STRICT LIABILITY, FAILURE TO COMPLY WITH ANY APPLICABLE LAW, OR OTHER FAULT.

The Contract at 2-4 (capitalization in original). In paragraph 10, the Contract provides a one-year statute of limitations from the date of the "event that resulted in loss, injury, damage or liability."

On the evening of August 23, 2016 to the early morning of August 24, 2016, a fire engulfed the Residence. At the time K. Sidik and the Children were at the Residence and in bed. As a result of the fire, K. Sidik and the Children suffered serious injuries. K. Sidik was hospitalized until December 15, 2016, when she passed away from her injuries.

The Plaintiff alleges that the fire began in the portable air conditioner and that the plastic encasement in the unit caused "thick, hot, toxic smoke [to] permeate[] throughout the [Residence]." He contends that the smoke detector was negligently installed by Defenders on the basement wall, which purportedly violated industry codes and standards, the manufacturer's installation instructions, and company policies. By the time the smoke from the fire reached the smoke detector, which was installed on a wall in the basement, and alerted the central station monitoring service, the bedrooms where the Children and K. Sidik were located were already engulfed in smoke.

On February 7, 2018, the Moving Defendants filed the instant motion, seeking to dismiss the second and seventh causes of action, the only claims that relate to their liability. The notice of motion incorrectly states that they seek dismissal of cross-claims against the Moving Defendants prior to their service. At that time, no cross claims had been asserted against the Moving Defendants. On March 1, 2018, the Royal Defendants filed their answer and included a cross-claim against the Moving Defendants and the Non-Appearing Defendants. Two weeks later, BJs filed its own answer and also included a cross-claim against the Moving Defendants and the Non-Appearing Defendants. In their reply briefing papers, the Moving Defendants acknowledge the

mistake, which was the result of an oversight. Under these circumstances, the Court considers the portion of the instant motion related to cross-claims withdrawn and will not consider any related arguments.

## II. DISCUSSION

### A. STANDARD OF REVIEW: FED. R. CIV. P. 12(B)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiff. *See, e.g.*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The Second Circuit has expounded that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule 8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555). "In ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

**B. CONSIDERATION OF MATERIALS OUTSIDE THE COMPLAINT**

In support of the instant motion, the Moving Defendants request that the Court consider the Contract for the purposes of deciding this motion.

"[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Giugliano v. F3² Capital Partners, LLC,* No. 14-cv-7240, 2015 WL 5124796, at *7 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.) (internal citation and quotation marks omitted); *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (noting the Second Circuit has recognized "exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint"). In adjudicating this motion, the Court is permitted to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the

Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Envtl. Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006)); *accord Healthnow New York, Inc. v. Catholic Health Sys., Inc.*, No. 14-cv-986S, 2015 WL 5673123 (W.D.N.Y. Sept. 25, 2015); *Oberstein v. SunPower Corp.*, No. 07-cv-1155, 2010 WL 1705868, at *3 (E.D.N.Y. Apr. 28, 2010).

After reviewing the complaint in conjunction with the Contract, the Court finds that the Plaintiff incorporated it by reference and that the Contract is integral to the complaint. It is specifically referenced in paragraph 73 of the complaint. *See* Compl. ¶ 73 ("On June 19, 2012, [the Plaintiff] entered into an alarm services contract with [ADT and Defenders] which included fire alarm/smoke detection services"). *See, e.g., Gesualdi v. Fazio*, No. 16-CV-5209, 2017 WL 8794775, at *1 n.2 (E.D.N.Y. Dec. 12, 2017), *report and recommendation adopted sub nom. Gesualdi v. Difazio*, No. 16-CV-5209, 2018 WL 1202640 (E.D.N.Y. Mar. 8, 2018) (ruling that "because the CBAs between [the company] and [the union] are integral to the complaint and referenced therein, the Court can consider them"); *Pearson Capital Partners LLC v. James River Ins. Co.*, 151 F.Supp.3d 392, 402 (S.D.N.Y. 2015) ("The Complaint thus 'relies on the terms and effect' of the [letters], rendering those documents 'integral' to the Complaint and appropriate for consideration in adjudicating a motion to dismiss." (internal citations omitted)); *Johnson v. Levy*, 812 F.Supp.2d 167, 177 (E.D.N.Y. 2011) (Spatt, J.) (considering letters because "they were incorporated by reference and ... integral to the complaint"); *Cue Fashions, Inc. v. LJS*

*Distribution, Inc.*, 807 F. Supp. 334, 335–36 (S.D.N.Y. 1992) (holding that an insurance contract is incorporated by reference into the complaint and can thus be considered when deciding a motion on the pleadings).

Accordingly, the Contract will be considered for the purpose of adjudicating the instant motion to dismiss.

## C. AS TO THE STATUTE OF LIMITATIONS

The Moving Defendants contend that the Plaintiff's claims against them are untimely because the Contract limits an otherwise longer statute of limitations.

Under New York State law, parties to a contract may agree to shorten the applicable statutory limitations period. *See* CPLR § 201. Section 201 of the CPLR sets forth the following: "An action … must be commenced within the time specified … unless a different time is prescribed by law or a shorter time is prescribed by written agreement[.]" CPLR § 201. In New York, courts will enforce a shortened statute of limitations period when the parties agree contractually to be bound by it, and the proposed period is reasonable. *See Dab Assocs. v. City of New York*, 32 A.D.3d 229, 232, 820 N.Y.S.2d 21 (2006) ("The parties to a contract may provide for a shorter period of limitations that that provided in CPLR article 2"). "An agreement which modifies the statute of limitations by specifying a shorter, but reasonable, period within which to commence an action is enforceable." *Executive Plaza, LLC v. Peerless Ins. Co.*, 22 N.Y.3d 511, 518, 982 N.Y.S.2d 826 (2014); *accord City of Yonkers v. 58A JVD Indus., Ltd.*, 115 A.D.3d 635, 637-38, 98 N.Y.S.2d 736 (2d Dep't 2014) ("Parties to a contract may agree to limit the period of time within which an action must be commenced to a period shorter than that provided by the applicable statute of limitations."); *Timberline Elec. Supply Corp. v. Insurance Co. of N. Amer.*, 72 A.D.2d 905, 906, 421 N.Y.S.2d 987 (4th Dep't 1979) ("Absent proof that the contract is one of adhesion

9

or the product of overreaching, or that [the] altered period is unreasonably short, the abbreviated period of limitation will be enforced."); *aff'd.* 52 N.Y.2d 793 (1980).

In the instant case, the Plaintiff and the Moving Defendants contracted to shorten the applicable limitations period to one year from the date of event that resulted in loss, injury, damage or liability. This includes "any lawsuit or other action," including those that sound in tort as well as contract. Courts applying New York law have consistently upheld one-year contractual limitations period in similar cases. *See, e.g.*, *Corbett v. Firstline Sec., Inc.*, 687 F. Supp. 2d 124, 128-29 (E.D.N.Y. 2009) (Spatt, J.) (collecting cases). This includes the enforcement of contractually agreed upon periods for claims that sound in contract and tort, including gross negligence claims. *Id*. (citing *Diana Jewelers of Liverpool, Inc. v. A.D.T. Co.*, 167 A.D.2d 965, 965, 562 N.Y.S.2d 305 (4th Dep't 1990); *Par Fait Originals v. ADT Sec. Sys., Northeast, Inc.*, 184 A.D.2d 472, 472, 586 N.Y.S.2d 2 (1st Dep't 1992)). Thus, the Court finds that the one-year period specified in the Contract is reasonable and enforceable under New York law. *See, e.g.*, *Corbett*, 687 F. Supp. 2d at 129.

The Royal Defendants and BJs argue that K. Sidik and the Children are not bound by the terms of the Contract because they are not signatories. "It is familiar law that a contract entered into between two parties may be enforced by a third party if the contracting parties intended the contract for the third party's direct benefit. … It is not enough that the contract benefit the third party incidentally; the agreement must express an intent to assume a duty directly to the third party." *Drake v. Drake*, 89 A.D.2d 207, 209, 455 N.Y.S.2d 420 (4th Dep't 1982) (internal citations omitted). The promisee's intention "is of primary importance." *Id*. (citing *Goodman-Marks Assoc. v. Westbury Post Assoc.*, 70 A.D.2d 145, 148, 420 N.Y.S.2d 26 (2d Dep't 1979)).

Here, the Plaintiff contracted with the Moving Defendants for security and monitoring services that were intended to benefit all of the occupants of the Residence, including his wife and his children. *See Onanuga v. Pfizer, Inc.*, No. 03-CV-5405, 2003 WL 22670842, at *5 (S.D.N.Y. Nov. 7, 2003) ("Under New York law, the intention to benefit a third party must be found within the four corners of the contract[.]"). During the period that the Contract was in effect, K. Sidik and the Children directly benefitted from the monitoring services. The terms contained in the Contract clearly evince an intention to benefit all persons residing at the Residence. Furthermore, New York State courts have uniformly held that a spouse that lives in a residence which is subject to the terms of a services agreement is subject to the terms of that agreement, regardless of whether he or she was also present when a spouse signed the agreement. *See Corbett*, 687 F. Supp. 2d at 133 (collecting cases). The Court finds this logic also applicable to the Children, who lived in the Residence and were subject to the terms of the agreement.

Accordingly, K. Sidik and the Children are intended third-party beneficiaries to the Contract.

Although the Plaintiff, K. Sidik and the Children are all subject to the shortened contractual statute of limitations period, T. Sidik argues that his claims are tolled, pursuant to the CPLR. A contractually agreed limitations period may be tolled by New York State's statutory tolling provisions. *Dail v. Merch. Mut. Ins. Co.*, 74 A.D.3d 28, 29-30, 900 N.Y.S.2d 536 (4th Dep't 2010) ("Our review of the applicable case law in New York State discloses that the courts have uniformly applied tolling provisions to the … period of limitations contained in policies of insurance[.]").

The Plaintiff asserts that CPLR § 210(a) tolls his claims until the date of K. Sidik's death. CPLR § 210(a) states, in pertinent part: "Where a person entitled to commence an action dies before the expiration of the time within which the action must be commenced and the cause of

11

action survives, an action may be commenced by his representative within one year after his death." In other words, when a person able to bring a claim dies before the applicable limitations period ends, the claim may be brought by that person's representative within one year of his or her death.

The fire occurred in the early morning of August 24, 2016. K. Sidik passed away on December 15, 2016, 112 days after the incident. During that period, the statute of limitations for any claim by or on behalf of K. Sidik was tolled. As the one-year contractually agreed upon statute of limitations period commenced on December 15, 2016, all of K. Sidik's claims expired on December 15, 2017. The instant lawsuit was filed on December 1, 2017, within the applicable statute of limitations. Thus, T. Sidik's claims as Administrator of the Estate of K. Sidik were timely filed.

The Plaintiff also contends that CPLR § 208 tolls his claims until the Children are 18 years old. If the statute of limitations period is less than three years, CPLR § 208 tolls the statute of limitations until a plaintiff is no loner disabled due to infancy or insanity. The CPLR defines infancy as a person under the age of 18, *see* CPLR § 105(j). However, § 208 only extends a claim by a maximum of ten years. In *Brookstein v. Republic Ins. Co.*, 266 A.D.2d 113, 698 N.Y.S.2d 683 (1st Dep't 1999), the First Department applied the infancy toll contained in CPLR § 208 to the contractual limitations period set forth in an insurance policy. *Id*. at 113.

Pursuant to the contractually defined statute of limitations period, the Plaintiff had one year to bring claims on behalf of the Children after the tolling period ends. Any such claims must have been filed within one year after (1) they turn 18; or (2) ten years after the incident, whichever occurs first. Although the complaint does not mention the specific age of the Children, it describes them as "infants" throughout the document. As mentioned above, this suit was filed on December

12

1, 2017. Since the incident occurred less than three years ago, the only relevant question before the Court is whether the Children's infancy expired prior to December 1, 2016. Reading the complaint in the light most favorable to the Plaintiff, the Court concludes that the Children were still infants on December 1, 2016. Accordingly, any claims filed on behalf of the Children were timely.

T. Sidik also commenced this action individually and does not cite any relevant statute or precedent that tolls his individual claims. Without any statutory toll, the statute of limitations for these claims began accruing on August 24, 2016, the date of the incident and ended on August 24, 2017, one year later. The complaint was filed more than three months after the statute of limitations expired for his individual claims. Accordingly, all of the Plaintiff's individual claims against the Moving Defendants are untimely.

The Moving Defendants' motion to dismiss, insofar as based on the statute of limitations, is granted with respect to the T. Sidik's individual claims and denied with respect to his claims on behalf of K. Sidik and the Children. The Plaintiff's individual claims against the Moving Defendants are dismissed.

**D. AS TO WHETHER THE MOVING DEFENDANTS OWED A SEPARATE LEGAL DUTY**

The Moving Defendants contend that the Plaintiff's tort-based claim is predicated upon a failure to perform contractual duties, and is therefore, insufficient as a matter of law. The Plaintiff argues that fire alarm service companies have a duty of reasonable care that is separate and distinct from their contractual obligations.

T. Sidik asserts a number of tort-based claims, based on an independent duty of reasonable care to install and monitor smoke alarms. These causes of action sound in both negligence and gross negligence.

"'[T]he threshold question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff?'" *Merrick Gables Ass'n, Inc. v. Town of Hempstead*, 691 F. Supp. 2d 355, 364 (E.D.N.Y. 2010) (Spatt, J.) (quoting *Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222, 232, 727 N.Y.S.2d 7 (2001)). "Absent a duty of care, there can be no breach thereof and no liability." *Gray v. Wackenhut Servs., Inc.*, 721 F. Supp. 2d 282, 287 (S.D.N.Y. 2010) (citing *Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 341, 162 N.E. 99 (1928); *Gordon v. Muchnick*, 180 A.D.2d 715, 579 N.Y.S.2d 745 (2d Dep't 1992)).

A contractual provision which releases a party from negligence will generally be enforced, absent a relevant statute or public policy. *See Melodee Lane Lingerie Co. v. Am. Dist. Tel. Co.*, 18 N.Y.2d 57, 69, 271 N. Y.S.2d 937 (1966). The New York Court of Appeals has upheld alarm services contracts which limit customer damages to $50. *See Florence v. Merchs. Cent. Alarm Co.*, 51 N.Y.2d 793, 795, 433 N.Y.S.2d 91 (1980) (applying a $50 liquidated damages provision in a commercial contract); *see also Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 76 N.Y.2d 220, 227, 55 N.Y.S.2d 286 (1990) (noting that contractual damage limitations help keep alarm services affordable). Here, the Contract limits the Moving Defendants' liability for negligence claims to the greater of $500 or 10% of the annual service fee.

"In some circumstances, New York courts have found that a [company] owes a common law tort duty to perform a contract non-negligently." *Hartford Fire Ins. Co. v. Atl. Handling Sys., LLC*, No. 09-CV-4127, 2011 WL 4463338, at *5 (E.D.N.Y. Sept. 26, 2011) (collecting cases). Yet, "this duty applies only to the 'limited class of cases in which a strong public interest in the careful performance of particular contractual obligations may give rise to a tort duty of due care.'" *Id.* (citing *Pfizer, Inc. v. Stryker Corp.*, No. 02 Civ. 8613, 2003 WL 21660339, at *2 (S.D.N.Y. July 15, 2003)).

14

The Plaintiff cites *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 593 N.E.2d 1365 (1992) for the proposition that fire alarm service companies have a duty of reasonable care distinct from their contractual obligations. The case involved a central station fire alarm system in a 42-story Manhattan skyscraper. The *Sommer* court found that a fire alarm company may be held liable in tort for its gross failure to perform contractual services in a suitable manner due to the nature of its services—to protect people and property— and New York City's "comprehensive scheme of fire-safety regulations" for certain buildings. The Court of Appeals noted that fire alarm companies "perform a service affected with a significant public interest; failure to perform the service carefully and competently can have catastrophic consequences." *Id*. at 552-53. This service gave rise to a duty of reasonable care that was independent of the defendant's contractual obligations.

*Sommer* is clearly distinguishable from the case at bar. It involved a 42-story building in Manhattan and a legally-required central station fire alarm system. This dispute resulted from a decision by a homeowner, who elected to install a residential alarm system in a single-family residence. While the Plaintiff alleges in the complaint that the installation of the fire alarm/smoke detector violated industry standards as well as internal policies and procedures, there is no allegation that the Moving Defendants violated a "comprehensive scheme of fire-safety regulations," which requires a certain level of fire/smoke detection. *Sommer*, 79 N.Y.2d at 552. The *Sommer* court reasoned that this regulatory scheme, where "[c]entral station operators … are franchised and regulated by [New York] City, and may be penalized for failing to transmit alarm signals, provide qualified operators, and other acts and omissions[,]" created a "significant public interest" associated with the service that fire alarm companies provide.

The Moving Defendants argue that *Vigilant Ins. Co. v. ADT Sec. Services, Inc.*, No. 10 Civ. 3066, 2011 WL 855874, at *3 (S.D.N.Y. Mar. 9, 2011) is more relevant to the instant case. There, an individual entered into a contract with ADT whereby ADT agreed to provide that person with equipment and monitoring service for fire and burglary protection. The contract in *Vigilant* contained subrogation exculpatory and limitation of liability provisions. In 2009, a fire originated in that person's residence. The alarm system failed to send a signal to the central station, which resulted in almost $2 million in property damage. The plaintiff claimed that ADT owed a duty to that individual to properly examine, monitor, test, install, inspect, service, maintain and repair the system. The *Vigilant* court found that allegations of tortious conduct did not implicate a legal duty independent of the contract and noted that the plaintiff chose to have a fire alarm system installed in his residence and selected ADT to monitor it. The public interest implicated in *Sommer* was not present in *Vigilant*.

Here, the Plaintiff chose to have a fire/smoke detection system installed in his home and chose ADT to monitor the system. ADT's responsibility to install, monitor, maintain, and test the system arose from the Contract, not a government-created regulatory scheme. *See Vigilant Ins. Co.*, 2011 WL 855874, at *3 ("[the plaintiff] did not plead that [the individual] was required by code or regulation to have his fire alarm monitored or that ADT had a special relationship with a city or county whereby ADT was required to report to the fire department."). As stated in the Contract, the Moving Defendants are not security consultants, and were contracted to render a discrete service. T. Sidik had the option to purchase additional fire/smoke detection but declined. Hence, the public interest discussed in *Sommer* is not present in the instant case.

Accordingly, there is no basis for negligence liability against the Moving Defendants and the Contract is enforceable against claims of ordinary negligence.

16

The Plaintiff further alleges gross negligence on the part of the Moving Defendants for negligently installing the fire alarm/smoke detector at the Residence by including a conclusory statement that the Moving Defendants' alarm installation constituted gross negligence. New York State public policy does not allow a party to use an exculpatory contractual clause to shield itself from damages caused by grossly negligent conduct. *Gross v. Sweet*, 49 N.Y.2d 102, 106, 424 N.Y.S.2d 365 (1979). However, "[g]ross negligence, when invoked to pierce a contractual limitation of liability, must smack of intentional wrongdoing by evincing a reckless indifference to the rights of others." *Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 77 A.D.3d 431, 433 (1st Dep't 2010) (internal citations omitted); *accord Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 554, 593 N.E.2d 1365 (1992) (Gross negligence, when invoked to pierce an agreed-upon limitation of liability in a commercial contract, must smack of intentional wrongdoing. It is conduct that evinces a reckless indifference to the rights of others." (internal citations and quotation marks omitted)).

The Plaintiff's gross negligence cause of action is based on a failure to properly install a fire alarm/smoke detector. This allegation is devoid of any facts that plausibly suggest the Moving Defendants' actions rise to gross negligence. Without facts to explain or suggest the motivation for their conduct, the Court cannot conclude that the alarm installation "'smacks' of intentional wrongdoing." *Colnaghi U.S.A. Ltd. v. Jewelers Prot. Servs.*, 81 N.Y.2d 821, 823-24, 611 N.E.2d 282 (1993).

Further, an alarm company whose purported conduct consists of an inadequate response to an alarm system or failure to inspect the system sounds in ordinary negligence, not gross negligence, as the Plaintiff argues. *Abacus Fed. Sav. Bank*, 77 A.D.3d at 433 (internal citations omitted); *accord Am. Auto. Ins. Co. v. Rest Assured Alarm Sys., Inc.*, 786 F. Supp. 2d 798, 807-08 (S.D.N.Y. 2011) ("In the alarm system context, a plaintiff generally does not state a cause of action

for gross negligence when the claim is merely one of 'inappropriate installation' or inspection of an alarm system or an 'inappropriate response to an alarm.'" (quoting *Metro. Prop. & Cas. Ins. Co. v. Budd Morgan Cent. Station Alarm Co.*, 95 F. Supp. 2d 118, 122 (E.D.N.Y. 2000))) (collecting New York State cases).

The Plaintiff cites *Sommer* for the proposition that the Moving Defendants may be held liable in tort for gross failure to perform contractual service property. As discussed above, *Sommer* found a public interest in the careful performance of a fire alarm services contract to install and monitor a central station alarm. The Plaintiff fails to assert that a similar public interest is present here. T. Sidik's attempt to convert this negligence allegation into gross negligence has been repeatedly barred by New York courts. *See, e.g.*, *Abacus Fed. Sav. Bank*, 77 A.D.3d at 433.

Accordingly, the Plaintiff fails to allege a cause of action against the Moving Defendants rooted in gross negligence.

As there is no independent, non-contractual duty that is distinct from those established in the Contract, the Plaintiff's claims against the Moving Defendants are dismissed. All causes of action asserted against the Moving Defendants conceivably equate to breach of contract claims, which are governed by the remedies set forth in the Contract.

### III. CONCLUSION

For the reasons stated above, the Moving Defendants' motion to dismiss the Plaintiff's complaint, pursuant to Rule 12(b)(6), is granted.

All claims by the Plaintiff against the Moving Defendants are dismissed with prejudice.

It is **SO ORDERED**:

Dated: Central Islip, New York

December 21, 2018

                                                                     */s/ Arthur D. Spatt*

                                                              ARTHUR D. SPATT

                                                            United States District Judge